**2016 UT App 107**

## THE UTAH COURT OF APPEALS

STERLING FIDUCIARIES LLC,
Appellant,

*v.*

JPMORGAN CHASE BANK NA,
Appellee.

Opinion
No. 20150358-CA
Filed May 19, 2016

Third District Court, West Jordan Department
The Honorable James D. Gardner
No. 130412969

Dwight J. Epperson, Attorney for Appellant

James D. Gilson and J. Tayler Fox, Attorneys
for Appellee

SENIOR JUDGE PAMELA T. GREENWOOD authored this Opinion, in
which JUDGE STEPHEN L. ROTH concurred.[1] JUDGE GREGORY K.
ORME concurred in the result.

GREENWOOD, Senior Judge:

¶1      Sterling Fiduciaries LLC (Sterling) appeals the district
court's grant of summary judgment in favor of JPMorgan Chase
Bank NA (Chase). We affirm.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

BACKGROUND[2]

¶2    On April 19, 2007, Kimberly and Kip McRae executed a promissory note in the amount of $900,000 in favor of Taylor Bean & Whitaker Mortgage Corp. (TBW) in connection with a mortgage on real property. The note was secured by a trust deed recorded on April 24, 2007. Mortgage Electronic Registration Systems Inc. (MERS) was listed as the beneficiary of the trust deed as nominee for TBW and its successors and assigns, holding legal title to the beneficial interests granted to those entities or individuals. The trust deed stated that the note "can be sold one or more times without prior notice to Borrower."

¶3    After the trust deed was recorded, TBW transferred its interest in the promissory note to Bank of America and its servicing rights to Washington Mutual Bank. On March 31, 2009, Chase obtained the servicing rights from Washington Mutual, and on May 27, 2010, it obtained the promissory note from Bank of America. As nominee, MERS facilitated and tracked these transfers, but none of the transfers was recorded with the Salt Lake County Recorder.

¶4    On October 10, 2010, the McRaes filed a quiet title action against TBW, asserting that the trust deed was void because TBW no longer had an interest in the note or trust deed. The McRaes' complaint purported to bring an action against both TBW and "any other person claiming an interest in the Property." Neither MERS nor Chase was named in the complaint, but the McRaes published notice to all unknown parties. When TBW failed to respond to the McRaes' complaint, the district court entered default judgment in favor of the

---

2. The facts are not disputed. Sterling challenges the district court's summary judgment only as a matter of law. *See* Utah R. Civ. P. 56(a).

McRaes against TBW on December 19, 2011, which was recorded on January 10, 2012. On September 22, 2011, before the default judgment was entered, the McRaes recorded a quitclaim deed transferring the property to Sterling.

¶5     The McRaes continued to make payments on the promissory note to Chase until November 1, 2012. When the note fell into default, MERS assigned its interest in the trust deed to Chase. That assignment was recorded with the Salt Lake County Recorder on February 6, 2013.

¶6     On October 15, 2013, Sterling filed a complaint against Chase, asserting that the assignment to Chase was void because no document evidencing Chase's interest was recorded in the county records prior to the recording of the quitclaim deed and because title to the property had been quieted in December 2011. Chase filed a motion for summary judgment, arguing that it was not necessary for it to record the assignment of the promissory note in order to protect its interest and that the default judgment quieted title only as to TBW.

¶7     The district court granted Chase's motion, concluding that the default judgment did not quiet title as to Chase's or MERS's interests in the property, since neither of those parties were named or served in that action. Sterling now appeals.


ISSUE AND STANDARD OF REVIEW

¶8     Sterling argues that the district court erred in granting summary judgment in Chase's favor. We review a district court's ruling on a motion for summary judgment for correctness. *Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, ¶ 10, 94 P.3d 179.

ANALYSIS

¶9    Sterling raises two arguments challenging the district court's summary judgment ruling. First, Sterling argues that any interest Chase may have had in the property was nullified and released by the default judgment against TBW. Second, Sterling argues that Chase's unrecorded interest in the property was void against Sterling because Sterling was a bona fide purchaser. We conclude that the default judgment quieted title only as to TBW. We further conclude that Sterling was not a bona fide purchaser, because it had constructive notice of Chase's interest.

I. The Default Judgment Quieted Title Only as to TBW.

¶10    Default judgment on a quiet title action may be entered only against "persons named in the summons and complaint who have been served and against all unknown persons as stated in the complaint and summons who have been served by publication." Utah Code Ann. § 78B-6-1315(4) (LexisNexis 2012). Because the recorded trust deed provided constructive notice of MERS's and Chase's interests, Chase could not have been considered an "unknown" person. Accordingly, the default judgment cannot be read as quieting title as to Chase.

¶11    Constructive notice may consist of either record notice, "which results from a record or which is imputed by the recording statutes," or inquiry notice, "which is presumed because of the fact that a person has knowledge of certain facts which should impart to him, or lead him to, knowledge of the ultimate fact." *FDIC v. Taylor*, 2011 UT App 416, ¶ 36, 267 P.3d 949 (citation and internal quotation marks omitted). Here, Sterling had record notice of MERS's interest in the trust deed because the trust deed was recorded before the quitclaim deed to Sterling. As a consequence of that notice, Sterling also had inquiry notice regarding Chase's interest.

¶12 The trust deed at issue in this case stated that MERS was the beneficiary of the trust deed "as a nominee for Lender and Lender's successors and assigns." The trust deed indicated that MERS held "legal title to the interests granted by [the McRaes] in" the trust deed and had the authority to exercise the beneficial rights on behalf of the lender and its successors.

¶13 Trust deeds naming a beneficiary to act on behalf of the lender and the lender's successors are frequently employed as a means to facilitate the securitization of mortgages. *See Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1197 n.2 (10th Cir. 2011) (defining "securitization" as the "process of pooling loans and selling them to investors on the open market").

> When a borrower takes out a home loan, the borrower executes two documents in favor of the lender: (1) a promissory note to repay the loan, and (2) a deed of trust, or mortgage, that transfers legal title in the property as collateral to secure the loan in the event of default. State laws require the lender to record the deed in the county in which the property is located. Any subsequent sale or assignment of the deed must be recorded in the county records, as well.
>
> This recording process became cumbersome to the mortgage industry, particularly as the trading of loans increased. It has become common for original lenders to bundle the beneficial interest in individual loans and sell them to investors as mortgage-backed securities, which may themselves be traded. MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender.

At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system.

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011) (citations omitted).

¶14    This practice has come under fire in recent years and has been the subject of a number of lawsuits challenging MERS's authority as a nominee for its members. In *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration System, Inc.*, 2011 UT App 232, 263 P.3d 397, we considered whether transferring a note secured by a trust deed rendered the note an unsecured obligation, extinguished MERS's beneficial interest as nominee for the lender, or precluded MERS from foreclosing on property on behalf of the new holder of the promissory note. *Id.* ¶¶ 2–5. We held that MERS's beneficial interest in the trust deed was not extinguished with the transfer of the note and that the trust deed's language making MERS a nominee for both the lender and its successors and assigns was enforceable. *Id.* ¶¶ 11–14. In other words, parties to a security instrument may "validly contract at the outset to have someone other than the beneficial owner of the debt act on behalf of that owner to enforce rights granted in [the security instrument]." *Id.* ¶ 13 (alteration in original) (citation and internal quotation marks omitted); *accord*

*Commonwealth*, 680 F.3d at 1204; *Mitchell v. ReconTrust Co.*, 2016 UT App 88, ¶¶ 21–22.

¶15    In *Delo v. GMAC Mortgage, LLC*, 302 P.3d 658 (Ariz. Ct. App. 2013), the Arizona Court of Appeals considered the related question of whether MERS, as nominee for a lender under a trust deed, must be named as a defendant in a tax-lien foreclosure against property subject to the trust deed. *Id.* at 662–63. As in this case, the trust deed in *Delo* named MERS "as the nominee for the lender, . . . [the] beneficiary, and the holder of legal title." *Id.* at 663. The court held that, in light of MERS's identification in the trust deed, "a diligent search for the true holder of the [promissory note], for purposes of giving proper notice of the tax-lien foreclosure lawsuit, would have included providing notice of the lawsuit to MERS." *Id.* Thus "those who purchase tax liens and seek to foreclose on them must give MERS notice of the foreclosure proceedings when [MERS is] identified in the deed of trust." *Id.* at 662.

¶16    The reasoning of the Arizona Court of Appeals is consistent with our holding in *Commonwealth* upholding the validity of MERS's beneficial interest in the trust deed and acknowledging the parties' right to appoint MERS to act on behalf of the lender. *See Commonwealth*, 2011 UT App 232, ¶¶ 11–14. We agree with the Arizona Court of Appeals that one aspect of MERS's beneficial interest is the right to notice.[3] *See Delo*, 302 P.3d at 663. The recorded trust deed identified MERS's beneficial interest in the property, and MERS therefore should have received notice of the quiet title action filed by the McRaes.

---

3. Although *Delo* and our decision in *Commonwealth* involved foreclosure of a tax lien and foreclosure of a trust deed, respectively, their analysis of MERS's rights in those contexts is also relevant to determining whether MERS has the right to notice in the context of a quiet title action.

Without such notice, the default judgment could not quiet title as to MERS.

¶17    MERS's recorded interest in the property, in turn, put potential buyers of the property on inquiry notice regarding Chase's interest in the property. The language of the trust deed indicated that MERS was nominated to act "as a nominee for Lender *and Lender's successors and assigns*." (Emphasis added.) The trust deed further provided that the note "can be sold one or more times *without prior notice to Borrower*." (Emphasis added.) This language put potential buyers on notice that the promissory note might be held by someone other than the named lender.

¶18    Further, the fact that the trust deed named MERS as the nominee should have put potential buyers on notice that an unnamed lender may hold an interest in the property. As discussed above, "MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). It should have been apparent to Sterling that it could identify the current lender or investors simply by contacting MERS, who "is the sole record keeper for the transactions between its members." *See Delo*, 302 P.3d at 662–63. Because MERS's interest in the property put the McRaes on inquiry notice regarding Chase's interest, the notice to unknown parties by publication was not valid as to Chase and the default judgment could not quiet title as to Chase.

¶19    Furthermore, despite the McRaes' attempt to quiet title as to both TBW and "any other person claiming an interest in the Property," the default judgment unambiguously stated that "Plaintiffs are awarded quiet title judgment against Defendant" and explicitly defined "Defendant" as TBW. This language unambiguously limits the default judgment to TBW. Thus, even

if Chase could be considered an unknown person, the default judgment would not quiet title as to Chase.

## II. Sterling Is Not a Bona Fide Purchaser.

¶20    Our determination that Sterling had constructive notice of MERS's and Chase's interests in the property also precludes Sterling from establishing that it was a bona fide purchaser. Utah Code section 57-3-103 provides that unrecorded documents are "void as against any subsequent purchaser of the same real property, or any portion of it, if: (1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and (2) the subsequent purchaser's document is first duly recorded." Utah Code Ann. § 57-3-103 (LexisNexis 2010). "In order to be a good faith purchaser, a subsequent purchaser must take [title to] the property without notice of a prior, unrecorded interest in the property." *FDIC v. Taylor*, 2011 UT App 416, ¶ 25, 267 P.3d 949 (alteration in original) (citation and internal quotation marks omitted). Had Sterling conducted a diligent inquiry regarding the true owner of the note, it would have discovered Chase's interest. Thus, Sterling could not have been considered a good faith purchaser and cannot establish its priority over Chase.

## CONCLUSION

¶21    Because we determine that the trust deed provided constructive notice of both MERS's and Chase's interests in the property, we conclude that the default judgment did not quiet title as to Chase and that Sterling was not a bona fide purchaser. Accordingly, we affirm the district court's grant of summary judgment in favor of Chase.

_____