**2017 UT App 135**

# THE UTAH COURT OF APPEALS

STERLING FIDUCIARIES LLC, STONE UNTURNED TRUST,
DM BUNKER LLC, 4MACBOYS LLC, CRAIG VAN LEEUWEN,
AND NEW LANDS DEVELOPMENT LLC,
Appellants,
*v.*
JPMORGAN CHASE BANK NA AND BENJAMIN WOOLF,
Appellees.

Opinion
No. 20150928-CA
Filed August 3, 2017

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 130900470

Dwight J. Epperson, Attorney for Appellants

James D. Gilson and J. Tayler Fox, Attorneys for
Appellee JPMorgan Chase Bank NA

Jonathan R. Rudd and Meagan Rudd, Attorneys for
Appellee Benjamin Woolf

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and STEPHEN L. ROTH concurred.[1]

MORTENSEN, Judge:

¶1      Sterling Fiduciaries LLC for a second time appeals to this
court, raising issues with a lower court's disposition of questions
surrounding competing interests in certain real property (the

---

1. Judge Stephen L. Roth participated in this case as a member of
the Utah Court of Appeals. He retired from the court before this
decision issued.

Property).[2] Because we determine that the issues raised here were previously decided by this court in *Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 2016 UT App 107, 372 P.3d 741, lack merit, are issues over which we lack jurisdiction, or are unpreserved, we affirm.

BACKGROUND

¶2    In 2007, L. Kip McRae and Kimberly A. McRae (the McRaes) obtained a loan for the Property. They executed a $900,000 promissory note in favor of Taylor, Bean & Whitaker Mortgage Corp. (Lender), who recorded a deed of trust in Salt Lake County. The deed named Mortgage Electronic Registration Systems Inc. (MERS) as the beneficiary on behalf of "Lender and Lender's successors and assigns." Lender thereafter sold the note, "which was subsequently transferred multiple times to other lenders." MERS tracked these transfers in its internal database, although the individual transfers were not part of the public record. Eventually, JPMorgan Chase Bank NA (Chase) became servicer—and, ultimately, owner—of the note.[3] The McRaes made their monthly mortgage payments to Chase beginning around April 2009 and continued to do so until they stopped paying on the note in October 2012.

¶3    In October 2010, the McRaes filed a quiet title action, naming Lender as the sole defendant. They did not name or serve MERS or any successor, including Chase. While the action

---

2. As will be discussed in greater detail, this case involves many parties and a variety of claims. We use "Sterling" to refer to Sterling Fiduciaries LLC and "Appellants" where we refer to multiple appellants collectively.

3. In February 2013, MERS assigned the trust deed to Chase. Up until that point, MERS remained the beneficiary of record.

was pending, the McRaes transferred the Property to Sterling. Sterling subsequently recorded a deed of trust in favor of 4MACBOYS LLC in Salt Lake County. Lender never answered the McRaes' complaint, and the district court granted default judgment quieting title against Lender. The default judgment was recorded in January 2012.

¶4    In November 2012, Benjamin Woolf entered into a contract to purchase the Property from Sterling. In December 2012, DM Bunker LLC filed a notice of financial interest in the Property in Salt Lake County.[4] In January 2013, Woolf filed the present suit against Sterling and the McRaes, alleging breach of the parties' real estate purchase contract.[5] Chase—who was, and currently is, "in possession of the original endorsed-in-blank Note"—eventually intervened in the action.

¶5    During discovery, DM Bunker served Bank of America NA with a subpoena seeking "documents related to its prior ownership of th[e] loan."[6] Bank of America was "unable to locate any of the records requested with the information provided."

---

4. According to DM Bunker, the company had provided professional services to the McRaes. As part of the agreement for those services, DM Bunker "reserve[d] the right to record an Attorney's Lien and or a Trust Deed against the Property to secure payment of the contingent fee." The notice of financial interest that DM Bunker recorded in Salt Lake County related to that agreement for services.

5. Also named as defendants were Craig Van Leeuwen, who had apparently met with Woolf and held himself out as the McRaes' attorney, and various parties claiming to have an interest in the Property, including DM Bunker, 4MACBOYS, and others.

6. Bank of America had preceded Chase as a transferee of the deed of trust.

¶6     Chase filed a motion for summary judgment in April 2014. The district court granted summary judgment on Chase's claim for declaratory relief that the McRaes' default judgment had not quieted title as to Chase or extinguished the deed of trust. It also granted summary judgment on Chase's breach of contract claim against the McRaes for defaulting under the note. The district court denied summary judgment on Chase's claim against all defendants for judicial foreclosure of the deed of trust. But after Chase filed a motion to reconsider that denial, on October 2, 2015, the district court granted summary judgment on the judicial foreclosure claim, entered a decree of foreclosure, and entered an order of sale to allow foreclosure of the trust deed. Appellants sought review of the summary judgment in Chase's favor, and on temporary remand from this court, the district court clarified that "its October 2, 2015 [summary judgment] Order constitutes the final, appealable order of the Court, in accordance with Rule 54(b) of the Utah Rules of Civil Procedure." Accordingly, only the issues connected with the October 2, 2015 order are before us on appeal.

¶7     Some of the parties involved in this appeal were contemporaneously fighting over the Property in another case. When MERS assigned its interest in the trust deed to Chase, Sterling filed suit against Chase, "asserting that the assignment to Chase was void because no document evidencing Chase's interest was recorded in the county records" and "because title to the property had been quieted in December 2011." *Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 2016 UT App 107, ¶ 6, 372 P.3d 741. The district court in that case concluded "that the [McRaes'] default judgment did not quiet title as to Chase's or MERS's interests in the property." *Id.* ¶ 7. Sterling appealed, and we affirmed. *Id.* ¶¶ 8, 21. Our decision was based on the determination "that the trust deed provided constructive notice of both MERS's and Chase's interests in the property." *Id.* ¶ 21. Accordingly, we concluded in *Sterling Fiduciaries* that the

McRaes' "default judgment did not quiet title as to Chase" and "Sterling was not a bona fide purchaser." *Id.*

ISSUES AND STANDARDS OF REVIEW

¶8 Appellants raise five issues on appeal.[7] First, they argue that Chase's beneficial interest was void "as against a subsequent purchaser like [Sterling]" because the interest was not recorded prior to Sterling's purchase of the Property. Second, Appellants argue that the McRaes' default judgment quieted title against Chase. Third, Appellants argue that DM Bunker's interest, having been recorded in December 2012—before Chase recorded the assignment of the deed of trust in January 2013—has priority over Chase's claimed interest. Fourth, Appellants argue that the district court erroneously granted default judgment against Van Leeuwen. Fifth, Appellants argue that the contract underlying Woolf's complaint expired and, upon expiration, became unenforceable.

¶9 The first three issues call into question the district court's grant of summary judgment. "We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539.

¶10 The standard of review applicable to the fourth and fifth issues is irrelevant because we determine that we lack jurisdiction to consider the issues or that Appellants failed to properly preserve them for our review.

---

7. The fourth and fifth issues raised rest on facts not set forth above. This is because, as will be explained in greater detail below, these issues have nothing to do with the summary judgment order that has been appealed.

ANALYSIS

I. Validity of Chase's Beneficial Interest

¶11    Appellants first claim that Chase's "failure to record its alleged beneficial interest in the property . . . until it recorded a Corporate Assignment of Deed of Trust dated January 31, 2013," rendered that interest "void as against a subsequent purchaser like [Sterling] . . . which purchased the Property for value and without notice in 2011." Appellants acknowledge that this argument rests on the fact that "Sterling Fiduciaries has claimed it is a bona fide purchaser, and relies upon a multitude of Utah law which protects those recording interests in real property, and reveals the consequences of not recording such interests."

¶12    However, Sterling was not a bona fide purchaser. *See Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 2016 UT App 107, ¶ 20, 372 P.3d 741. Our conclusion on this point has preclusive effect on the present action and is determinative of this issue. *See Krofcheck v. Downey State Bank*, 580 P.2d 243, 244 (Utah 1978) ("The doctrine of res judicata will bar a subsequent action if the following requirements are met: (1) the two cases must be between the same parties or their privies; (2) there must have been a final judgment on the merits of the prior case; and (3) the prior adjudication must have involved the same issue or an issue that could or should have been raised therein.").

¶13    Appellants do not dispute that our earlier decision operates as res judicata. They do not claim that the opinion left unanswered the question they now raise—nor could they, given our explicit determination in *Sterling Fiduciaries* that "Sterling could not have been considered a good faith purchaser and cannot establish its priority over Chase." *Sterling Fiduciaries*, 2016 UT App 107, ¶ 20. Instead, their only response is that "the prior case . . . should be reconsidered."

¶14　Of course, we are bound by horizontal stare decisis and Appellants provide no analysis that overcomes this obstacle. "Horizontal stare decisis . . . requires that a court of appeals follow its own prior decisions. This doctrine applies with equal force to courts comprised of multiple panels, requiring each panel to observe the prior decisions of another." *State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994). Accordingly, we are in no position to simply reconsider this court's prior decision. Any desire by Sterling for reconsideration should have been pursued by way of a petition for rehearing or a petition for certiorari in *Sterling Fiduciaries*.

¶15　Because Appellants provide no reasoned basis for us to reconsider an opinion decided by another panel of this same court on the same facts before us here, we reject the argument that Sterling was a bona fide purchaser and affirm the district court's grant of summary judgment in this regard.

## II. The McRaes' Default Judgment

¶16　Appellants next contend that the McRaes' default judgment quieted title as to Chase. They cite cases from other jurisdictions in which, they claim, "courts have flirted with Wall Street's latest attempts to conduct business more efficiently by ignoring local recording laws and long standing consequences by giving MERS a pass when it comes to document recording." Appellants specifically direct our attention to a case from the Tennessee Supreme Court, *Mortgage Electronic Registration Systems, Inc. v. Ditto*, 488 S.W.3d 265 (Tenn. 2015), which, according to Appellants, "called MERS' bluff."

¶17　But we have already considered challenges to the validity of MERS's approach and upheld "the validity of MERS's beneficial interest in the trust deed and acknowledg[ed] the parties' right to appoint MERS to act on behalf of the lender." *Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 2016 UT App 107, ¶ 16, 372 P.3d 741. And even if we were inclined to revisit

our earlier rulings regarding the validity of MERS's interests—which we are not—we have already specifically decided the issue as it relates to the present parties and the default judgment at issue.

¶18    In *Sterling Fiduciaries*, we answered the question of whether title to the property had been quieted as to Chase. *Id.* ¶ 10. We said unequivocally that the McRaes' "default judgment cannot be read as quieting title as to Chase." *Id.* Just as our earlier opinion had preclusive effect on the issue of Sterling's status as a bona fide purchaser, it also precludes reconsideration of whether the default judgment operated to quiet title against Chase. We therefore affirm the court's judgment on this issue.

### III. DM Bunker's Interest

¶19    The third issue Appellants raise centers on DM Bunker's notice of financial interest in the Property, which it recorded in December 2012. Specifically, Appellants contend that the district court erred in granting summary judgment because there were "obvious gaps in Chase Bank's purported chain of title to a beneficial interest in the Trust Deed." These gaps, Appellants contend, are the result of "problems with Chase Bank's Declaration, and Bank of America's failure to find any information related to McRae, their Property, or the relevant Trust Deed." In essence, Appellants rely on the alleged deficiencies in Chase's chain of title to argue that DM Bunker had an interest superior to Chase.

¶20    The declaration to which Appellants refer was filed by Chase in support of its motion for summary judgment. Chase used the declaration to help establish the chain of title between Lender and Chase. The district court struck part of the declaration because it was not based on personal knowledge of the declarant. Appellants now contend that with the relevant portion stricken, there is no proof that Bank of America received

the beneficial interest, making it impossible to prove that Bank of America properly transferred that interest to Chase.

¶21 Chase counters that chain-of-title evidence is irrelevant because "[t]here is no dispute that Chase physically possesses the endorsed-in-blank Note executed by the McRaes." It further asserts that "[e]ven if the underlying chain-of-title was relevant, the undisputed evidence establishes that Chase has valid title to both the Note and Trust Deed." We agree with Chase.

¶22 Under Utah law, an endorsed-in-blank "instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Utah Code Ann. § 70A-3-205(2) (LexisNexis 2009); *see Commonwealth Prop. Advocates, LLC v. JP Morgan Chase Bank*, 2012 UT App 126, ¶ 2, 278 P.3d 618 ("Because it is undisputed that Chase was in possession or held the indorsed in blank note, as a matter of law Chase was entitled to enforce that note.").

¶23 Like *Commonwealth*, there is no dispute that Chase is in possession of the note. Appellants do not address this except to say that somehow Chase's possession of the note creates "a genuine issue of material fact, which should have prevented" summary judgment. Even that response comes only in connection with Appellants' argument that the McRaes' default judgment should operate against Chase. We are unable to identify any actual dispute of fact over whether Chase is in possession of the note. Accordingly, Chase is entitled to enforce the note and the district court did not err by entering orders allowing Chase to do so.

¶24 In any event, as Chase points out, it adequately established its chain of title, making summary judgment appropriate on that basis as well. Chase provided evidence demonstrating that "MERS was the beneficiary of the Trust Deed from its inception until MERS assigned its rights thereunder to Chase on February 6, 2013, thus creating an unbroken chain-of-

title of the beneficial interest in favor of Chase." Bank of America had been a transferee of the deed of trust before Chase. *See supra* ¶ 5 and note 5. Because of its connection to the deed of trust, DM Bunker had served Bank of America with a subpoena, and Appellants now rely heavily on that subpoena response—that Bank of America was "unable to locate any of the records requested with the information provided"—to counter this and argue that there was a dispute of fact over Chase's chain of title.

¶25 But Bank of America's response really establishes little. Being unable to locate records with the information provided is a far cry from saying such records do not exist or never existed. Furthermore, while the stricken portions of Chase's declaration spoke to the transfer of certain interests to Bank of America and then from Bank of America to Chase, such transfers are unnecessary to demonstrate Chase's chain of title, given the direct transfer of rights from MERS to Chase in 2013.

¶26 For these reasons, we reject Appellants' attempts to attack Chase's chain of title. And because Appellants rely on the alleged deficiencies in the chain of title to argue that DM Bunker had an interest superior to Chase's, we reject that argument as well. We therefore affirm the district court's summary judgment on this point.

IV. Default Judgment Against Van Leeuwen

¶27 In an order separate from the summary judgment order just affirmed, the district court granted Woolf a default judgment against Van Leeuwen. The court granted default under rule 37(d) of the Utah Rules of Civil Procedure, as a sanction for Van Leeuwen's failure to respond to Woolf's discovery requests. Appellants now argue that the entry of default was improper. We are unable to consider this issue,

however, because it is not within the issues certified as final under rule 54(b) of the Utah Rules of Civil Procedure.[8]

¶28 When this court directed the parties to obtain an order from the district court clarifying whether and what issues were ripe for appellate review, the district court clarified only that its October 2, 2015 order was final and appealable. That order (1) struck portions of Chase's declaration, *see supra* ¶ 20; (2) denied a rule 56(f)[9] motion filed by a defendant, which is not relevant to this appeal; (3) granted Chase's motion to reconsider the court's ruling on Chase's motion for summary judgment, *see supra* ¶ 6; (4) granted Chase's motion for summary judgment on another issue not relevant to this appeal; and (5) denied Sterling's cross-motion to reconsider the district court's summary judgment ruling. It made no mention of Van Leeuwen and decided no issues related to him. Only those issues certified as final are subject to appellate review at this juncture. All other issues remain in their non-final state and are currently beyond the jurisdiction of this court.

---

8. Woolf asserts that "there is no written order" granting default against Van Leeuwen and that rule 7 of the Utah Rules of Civil Procedure is thus unsatisfied. Appellants do not respond to this assertion, and our review of the record reveals that Woolf is correct. On July 21, 2014, the district court noted in a minute entry, "The Court grants the Default against Defendant Craig Van Leeuwen." The next day, before any order was submitted or signed, Appellants filed their notice of appeal. But whether a final order under rule 7 was entered is not the real issue here, because this issue was not part of the district court's rule 54(b) certification.

9. This provision is now found in subsection (d) of rule 56. *See* Utah R. Civ. P. 56(d).

¶29 Because this issue was not part of the district court's rule 54(b) certification, we lack jurisdiction to consider it. *See Preston & Chambers, PC v. Koller*, 943 P.2d 260, 264 n.4 (Utah Ct. App. 1997) (explaining that issues dealing with claims of "alleged accounting errors and overbilling" were "not appropriately before this court, as the Rule 54(b) certification was only granted as to the legal malpractice counterclaims"). We therefore dismiss without prejudice, for lack of jurisdiction, Appellants' challenge to the default judgment against Van Leeuwen.

## V. The Real Estate Purchase Contract

¶30 The final issue on appeal centers on the contract for sale of the Property between Woolf and Sterling. Appellants claim that the contract "was never fully executed" and that, therefore, "there can be no breach of contract." Woolf argues that this issue was not preserved. We agree.

¶31 We require appellants to include in their briefs "citation to the record showing that the issue was preserved in the trial court" or "a statement of grounds for seeking review of an issue not preserved in the trial court." Utah R. App. P. 24(a)(5). Appellants' brief contains neither. There is no statement of preservation, nor is there a request that we review this issue under some exception to our preservation requirement. We therefore decline to consider this issue.

## CONCLUSION

¶32 The district court's grant of summary judgment in Chase's favor is affirmed. We dismiss Appellants' claim that the district court erroneously granted default judgment against Van Leeuwen because we lack jurisdiction to consider it. And we will not review Appellants' unpreserved claim that the underlying contract in this case was unenforceable.

———————