2017 UT App 105

## THE UTAH COURT OF APPEALS

CANDIDA S. BAHNMAIER,
Appellant,

*v.*

NORTHERN UTAH HEALTHCARE CORPORATION AND
RENEL RYTTING,
Appellees.

Opinion
No. 20160102-CA
Filed June 29, 2017

Third District Court, West Jordan Department
The Honorable James D. Gardner
No. 140401429

April L. Hollingsworth, Attorney for Appellant

Michael Patrick O'Brien, Mark D. Tolman, and Paul
R. Smith, Attorneys for Appellees

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

ROTH, Judge:

¶1 Candida S. Bahnmaier appeals the district court's grant of summary judgment in favor of Northern Utah Healthcare Corporation (dba St. Mark's Hospital) and Renel Rytting. We affirm.

BACKGROUND[1]

¶2    Bahnmaier was employed by St. Mark's Hospital (the Hospital) as a surgical technician on the Hospital's cardiovascular heart surgery team. The initial employment application Bahnmaier signed in 2005 included the following acknowledgment: "I UNDERSTAND AND AGREE THAT ANY EMPLOYEE HANDBOOK WHICH I MAY RECEIVE WILL NOT CONSTITUTE AN EMPLOYMENT CONTRACT, BUT WILL BE MERELY A GRATUITOUS STATEMENT OF FACILITY POLICIES." (Emphasis in original.) While Bahnmaier was working for the Hospital, the Hospital adopted a for-cause employment model, which permitted an employee to be terminated only for cause. Bahnmaier subsequently signed two separate employment agreements—a retention bonus agreement in 2007 and an employee agreement when she joined the Hospital's heart surgery team in 2008—each of which provided,

> It is understood that all employment, including EMPLOYEE'S employment, with HOSPITAL is for an indefinite term and is terminable for cause. Cause is defined as a reason for disciplinary action that is not arbitrary, capricious, or illegal that is based on facts the Hospital reasonably believes to be true. Nothing in this Agreement will be construed to obligate HOSPITAL to employ EMPLOYEE for any particular time or under any particular terms or conditions of employment.

¶3    The Hospital has a Substance Use Policy, which prohibits employees from "[r]eporting to work, or being at work, while under the influence of or while impaired by alcohol." The policy

---

1. "Because this matter was decided on summary judgment, we recite the facts and inferences in the light most favorable to the nonmoving party." *Mountain West Surgical Center, LLC v. Hospital Corp. of Utah*, 2007 UT 92, ¶ 2, 173 P.3d 1276.

requires "leadership" to "conduct an investigation" "[u]pon notification that any person has a reasonable suspicion that an employee . . . is violating, or has violated" the Substance Use Policy and to "take whatever action necessary to protect patients and employees." The Hospital's Code of Conduct provides that "[r]eporting to work under the influence of . . . alcohol . . . may result in immediate termination" and that the Hospital "may use drug testing as a means of enforcing" the Substance Use Policy.

¶4    On May 12, 2011, Bahnmaier was issued a written warning for showing up to work under the influence of alcohol. The warning indicated that "[f]urther events will result in additional disciplinary action up to and including termination." Bahnmaier signed the written warning and did not challenge it or comment on its allegations at that time.

¶5    Less than a year later, on March 29, 2012, Bahnmaier covered an on-call shift for a co-worker. She was called in for an emergency open-heart surgery and reported for work at approximately 7:00 p.m. Suspecting that Bahnmaier was under the influence of alcohol, Bahnmaier's supervisor, Rytting, sent her home and reported the incident to the Executive Director of Surgical Services, Corbie Petersen.

¶6    Rytting related the following information to Petersen: When Bahnmaier came in to work, her "eyes looked glazed and dilated and she had dark makeup smeared under her eyes," "[h]er speech was slurred, her eyes darted and she was staggering." This led Rytting to believe that Bahnmaier "was under the influence of some substance." Soon after, another surgical technician approached Rytting and told her he also believed Bahnmaier was under the influence. Rytting called Bahnmaier into her office and confronted Bahnmaier with her suspicions. According to Rytting, Bahnmaier initially denied being under the influence and insisted that she was safe to work. However, when Rytting gave her the option of taking a drug test or going home, Bahnmaier told Rytting, "I won't pass the test, I know I won't" and went home.

¶7    The next day, on March 30, while Bahnmaier was working a shift at Timpanogos Hospital—an affiliated hospital that sometimes traded nursing shifts with the Hospital—the Hospital's human resources director contacted the human resources director at Timpanogos Hospital, Kelly Brimhall, and requested that he arrange a drug test for Bahnmaier. The drug test came back negative.

¶8    Brimhall, however, related to Petersen the following conversation he had with Bahnmaier while he waited with her for the drug screening company to arrive for the test:

> [Bahnmaier] indicated that she was not originally on-call the previous night, Thursday, but a co-worker called her and asked that she take his/her call for the evening. She agreed, but admitted that by then, she was drunk. During the same evening, she admitted to being called in for a case and showing up drunk to the case and having her supervisor realize that she was drunk and sent her home for the evening without allowing her [to] work.

Relying on the reports of Rytting and Brimhall, and "[i]n light of the prior Written Warning [she] had given to [Bahnmaier]," Petersen "decided to terminate [Bahnmaier's] employment with [the] Hospital . . . effective April 10, 2012."

¶9    Bahnmaier filed suit against the Hospital and Rytting on February 6, 2014. The complaint asserted breach of contract and breach of the duty of good faith and fair dealing against the Hospital, defamation against Rytting, and negligence and interference with economic relations against both defendants.

¶10   In Bahnmaier's deposition, she denied having been intoxicated and denied that she admitted to Rytting either that she was intoxicated or that she would fail a drug test. However, she also stated that she did not recall the details of her

conversation with Rytting and admitted that she may have made a "smart aleck" comment that could have given Rytting the impression that she did not believe she would pass a drug test.

¶11 The Hospital and Rytting filed a motion for summary judgment. The district court ruled that Bahnmaier's negligence claim was "barred by the economic loss rule because she ha[d] not alleged a duty independent of any alleged contractual obligation." Alternatively, the court held that no trier of fact could "reasonably find that Defendants breached any possible duty to Bahnmaier that may have arisen from the Hospital's Substance Use Policy and its 'for cause' employment termination policy." The court further determined that "no trier of fact could reasonably conclude that Rytting knowingly or recklessly made a false statement about" Bahnmaier and ruled that Bahnmaier's defamation claim was therefore untenable. Because Bahnmaier conceded that her interference with economic relations claim was based on the same facts as her defamation claim, the court also granted summary judgment on that claim. The court determined that Bahnmaier's good faith and fair dealing claim was identical to her contract claim because she alleged only a breach of express and implied contract terms.[2] The court ruled that Bahnmaier's breach of contract claim failed because Bahnmaier had "not raised a genuine dispute of material fact about whether" Petersen had a reasonable belief that there was good cause to terminate Bahnmaier. The court further

---

2. Bahnmaier made no attempt to challenge the district court's reasoning for rejecting her good faith and fair dealing claim in her opening brief, and so we do not address the court's ruling in that regard. *See Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision."); *Eddy v. Albertson's, Inc.*, 2001 UT 88, ¶ 21, 34 P.3d 781 ("It is well established that we will not consider matters raised for the first time in the reply brief." (citation and internal quotation marks omitted)).

determined that Bahnmaier could not base a breach of contract claim on the Substance Use Policy because the Hospital had effectively disclaimed contractual liability for that policy and, alternatively, because the Hospital had not violated the policy. The district court therefore granted the defendants' motion for summary judgment on all claims. Bahnmaier appeals.

ISSUE AND STANDARD OF REVIEW

¶12   Bahnmaier challenges the district court's summary judgment ruling in favor of the Hospital and Rytting. "We review a district court's decision to grant summary judgment for correctness, giving no deference to the district court. Our review is limited to determining whether the district court correctly applied the summary judgment standard in light of the undisputed material facts." *Raab v. Utah Ry. Co.*, 2009 UT 61, ¶ 10, 221 P.3d 219.

ANALYSIS

I. Breach of Contract

¶13   Bahnmaier first asserts that the district court erred in determining as a matter of law that the Hospital did not violate either an implied contract based on its Substance Use Policy or its express employment contract with Bahnmaier.

¶14   Bahnmaier argues that the Substance Use Policy constituted an implied contract and that the Hospital's decision to terminate her employment without conducting a drug test violated that contract. Although employee manuals or statements of policy may be sufficient to create an implied contract, "Utah law allows employers to disclaim any contractual relationship that might otherwise arise from employee manuals." *Tomlinson v. NCR Corp.*, 2014 UT 55, ¶ 25, 345 P.3d 523. "[A] clear and conspicuous disclaimer, as a matter of law, prevents employee manuals or other like material from

being considered as implied-in-fact contract terms." *Id.* (citation and internal quotation marks omitted). We agree with the district court that the Hospital effectively disclaimed any contractual liability for its Substance Use Policy and that, even if it did not, the Hospital's actions cannot be construed to have violated that policy.

¶15    Bahnmaier signed an employment application in 2005 which contained an acknowledgment stating, "I UNDERSTAND AND AGREE THAT ANY EMPLOYEE HANDBOOK WHICH I MAY RECEIVE WILL NOT CONSTITUTE AN EMPLOYMENT CONTRACT, BUT WILL BE MERELY A GRATUITOUS STATEMENT OF FACILITY POLICIES." (Emphasis in original.) This clear and conspicuous disclaimer, as a matter of law, precluded the Substance Use Policy from being construed as an implied contract. *See id.* Nothing in the subsequent employment contracts Bahnmaier signed abrogated this disclaimer. In fact, those agreements reaffirmed that the Hospital was not required to employ her "under any particular terms or conditions of employment."

¶16    In any event, there was nothing in the plain language of the Substance Use Policy that mandated a drug test when an employee was suspected of a violation or that precluded termination in the absence of a drug test. *See Peterson & Simpson v. IHC Health Services Inc.*, 2009 UT 54, ¶ 13, 217 P.3d 716 ("[W]e determine what the parties have agreed upon by looking first to the plain language within the four corners of the document."). The policy provided that "[u]pon notification that any person has a reasonable suspicion that an employee . . . has violated[] this policy, the leadership of the Facility shall conduct an investigation," and the Code of Conduct stated that the Hospital "*may* use drug testing as a means of enforcing" the Substance Use Policy. (Emphasis added.) Although the Substance Use Policy required employees to submit to testing "upon reasonable suspicion," there was nothing requiring the Hospital itself to conduct a test as part of an investigation. And the Code of Conduct's use of the word "may" meant that "drug testing" was

at the employer's option. *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 25, 48 P.3d 895 ("The plain, ordinary, and accepted meaning of the word 'may' is '"permissive" or "discretionary,"' generally indicating that an individual is either 'permitted' or '[h]as a possibility' to do something." (alteration in original) (quoting *May*, Black's Law Dictionary 993 (7th ed. 1999))). Thus, even if the Substance Use Policy could be construed as an implied contract, it does not support Bahnmaier's argument that the Hospital violated the policy when Rytting failed to have Bahnmaier submit to a drug test.

¶17　Bahnmaier next argues that her termination violated the "for cause" provisions of her employment contract. Bahnmaier's employment agreement provided that she could be terminated only "for cause" and defined "cause" as "a reason for disciplinary action that is not arbitrary, capricious, or illegal that is based on facts the Hospital reasonably believes to be true." Bahnmaier asserts that there is a dispute of fact regarding whether Petersen—the director who ultimately terminated Bahnmaier's employment—reasonably believed that Bahnmaier had violated the Substance Use Policy, because no drug test was conducted on the night of the alleged violation and because Petersen's investigation did not involve speaking to Bahnmaier or any co-workers who saw her that night. However, it is undisputed that Petersen received independent reports from Rytting and Brimhall indicating that Bahnmaier had admitted to them that she was intoxicated at the time of her shift. It is also undisputed that less than a year before this incident, Petersen had disciplined Bahnmaier regarding another violation of the Substance Use Policy. Further, as discussed above, the Hospital had no obligation to conduct a drug test as part of its investigation. While a positive drug test or additional investigation may have bolstered Petersen's belief that Bahnmaier had violated the policy on the night in question, the information Petersen received from two independent sources that Bahnmaier herself had admitted to being under the influence was sufficient on its own to support a reasonable belief in that regard. Thus, we agree with the district court that "a trier

of fact could not reasonably conclude that Petersen did not reasonably believe that Bahnmaier had violated the Substance Use Policy."

¶18    Further, we agree with the district court that "a trier of fact could not reasonably conclude that Petersen's decision to terminate Bahnmaier's employment for that reason was arbitrary." The only evidence Bahnmaier presented to demonstrate the arbitrariness of her termination under these circumstances was personnel records that she claims indicate other similarly situated employees were treated more leniently.[3] But the records do not support Bahnmaier's argument.

¶19    In the first example case, the employee was suspended, not terminated, because her job performance had deteriorated. She was ordered to take a drug test, but the record does not indicate the results of that test. Moreover, the record does not show any evidence of substance abuse apart from her abrupt changes in behavior, which could have been caused by something other than drug use. Conversely, in Bahnmaier's case, two separate individuals reported that Bahnmaier had admitted to being under the influence while at work. There is also nothing in the record to indicate that the employee had been disciplined previously, as Bahnmaier had. Thus, Bahnmaier's situation was not comparable to that of the employee in the first example. In another example case, an employee, whose termination was based on improper handling of narcotics, had received a previous warning for failing to properly chart and dispose of medications. The Hospital handled that situation the same way it handled Bahnmaier's—it gave the employee a warning for her first violation of the Substance Use Policy and terminated her when it received reports of a subsequent violation.

---

3. The Hospital asserts that these records should be disregarded because they were unauthenticated. For purposes of our decision, we assume that the records were properly before the court.

¶20    Thus, the records Bahnmaier relies on do not support her claim that the Hospital's decision to terminate her was arbitrary. Moreover, Bahnmaier worked on a heart surgery team, and a decision to terminate an employee for actions that could impair her skills and judgment under such circumstances, especially in light of the prior warning, was not arbitrary.

¶21    For these reasons, we conclude that the district court did not err by granting summary judgment in favor of the Hospital on Bahnmaier's implied and express contract claims.

## II. Negligence

¶22    Bahnmaier next challenges the district court's ruling that her negligence claims against the Hospital and Rytting were barred by the economic loss rule. She argues both that the economic loss rule does not apply to employment cases and that her claim that she suffered emotional distress removes her case from the purview of that rule.

¶23    However, we do not need to address the district court's analysis of the economic loss rule because we affirm on the court's alternative ground for rejecting Bahnmaier's negligence claims—that she has failed to demonstrate an issue of fact regarding whether either Rytting or the Hospital breached a duty to her. Bahnmaier has not alleged that the defendants breached any duties to her independent of those raised in her breach of contract action. Bahnmaier asserted that the Hospital breached its duty by failing to adhere to its Substance Use Policy and by terminating her employment without cause and that Rytting's breach also involved failure to adhere to the Substance Use Policy. As discussed in the previous section, the Substance Use Policy did not require drug testing to confirm an employee's substance abuse, and Bahnmaier's employment was terminated for cause based on Petersen's reasonable belief that Bahnmaier had violated the Substance Use Policy. Thus, Bahnmaier cannot establish that either the Hospital or Rytting breached any duty to her. Accordingly, the district court did not err in granting

summary judgment in favor of the defendants on Bahnmaier's negligence claims.

### III. Defamation and Interference with Economic Relations

¶24    Bahnmaier challenges the district court's ruling on her defamation and interference with economic relations claims. The parties agree that Rytting's statements to Petersen were subject to a qualified privilege. *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58 (Utah 1991) ("[A] qualified privilege protects an employer's communication to employees and to other interested parties concerning the reasons for an employee's discharge."). This qualified privilege effectively precludes Bahnmaier from recovering damages for defamatory statements unless she can show an abuse of the privilege by demonstrating that Rytting "(1) made a defamatory statement knowing it to be false or (2) acted in reckless disregard as to its falsity." *See Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶¶ 27–28, 221 P.3d 205.

¶25    Bahnmaier asserts that her deposition testimony that she did not tell Rytting she would not pass a drug test raises a question of fact as to whether Rytting either knew that her statement to Petersen was false or acted in reckless disregard of its falsity. However, Bahnmaier's denial was fatally equivocal; she admitted that she did not actually recall the details of her conversation with Rytting and that she could have made a "smart aleck" comment that could have given Rytting the impression that she would not pass a drug test. We agree with the district court that no reasonable trier of fact could have concluded that Rytting knew her statement to Petersen was false or acted with reckless disregard as to its falsity when Bahnmaier herself admitted that she could have given Rytting the impression that she did not believe she would pass a drug test. Thus, the district court did not err in granting summary judgment on this claim.

¶26    Finally, because Bahnmaier concedes that the success of her interference with economic relations claim hinges on the

success of her defamation claim, we affirm the district court's summary judgment ruling on the interference claim as well.

CONCLUSION

¶27    We conclude that the Hospital's Substance Use Policy did not constitute an implied contract requiring the Hospital to conduct a drug test upon reasonable suspicion of an employee's intoxication and that Bahnmaier failed to raise a genuine issue of fact as to whether the Hospital violated its "for cause" employment contract with Bahnmaier. Thus, the district court did not err in granting summary judgment in favor of the defendants on Bahnmaier's contract and negligence claims. Further, because Bahnmaier failed to raise a genuine issue of fact as to whether Rytting's statements to Petersen were knowingly false or made with reckless disregard as to their falsity, the district court did not err in granting summary judgment to the defendants on Bahnmaier's defamation and interference with economic relations claims. Accordingly, we affirm the district court's ruling.

––––––––––