**2018 UT App 7**

# THE UTAH COURT OF APPEALS

SHANE MORRIS,
Appellee,
*v.*
OFF-PISTE CAPITAL LLC,
Appellant and Cross-appellee,
*v.*
AMERICAN HOME MORTGAGE SERVICING INC.,
Appellee and Cross-appellant.

Amended Opinion[1]
No. 20150008-CA
Filed January 5, 2018

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 080904328

Bradley L. Tilt and Sara E. Bouley, Attorneys for
Appellant and Cross-appellee

Ronald G. Russell, Bentley J. Tolk, and Jeffery A.
Balls, Attorneys for Appellee and Cross-appellant
American Home Mortgage Servicing Inc.

SENIOR JUDGE STEPHEN L. ROTH authored this Opinion, in which
JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN concurred.[2]

---

1. This Amended Opinion replaces the Opinion in Case No.
20150008-CA issued on August 24, 2017. Off-Piste Capital LLC
filed a petition for rehearing, and we called for a response.
Without changing our ultimate conclusion, we grant the petition
for the narrow purpose of clarifying our analysis of the Notice of
Interest question in Part I.B. We deny the petition in all other
respects.

2. Senior Judge Stephen L. Roth began work on this case as an
active member of the Utah Court of Appeals. He retired before

(continued…)

ROTH, Judge:

¶1    This case involves multiple competing claims related to a parcel of real property (the Property). After a trial, the district court quieted title to the Property in Short Sale Services LLC. Off-Piste Capital LLC appeals, arguing that its claim to title is superior to Short Sale's for a variety of reasons. American Home Mortgage Servicing Inc. cross-appeals, claiming that the court improperly determined that it was bound by a default judgment entered against a different party. We affirm in part and reverse in part.


## BACKGROUND

### *Off-Piste's Involvement with the Property*

¶2    The Property is a parcel of residential real estate located in a Draper development, which Todd Smith bought in 2005. To finance the purchase, Smith borrowed money from various entities. As security for one of his loans, Smith executed a trust deed on the Property and conveyed it to Smart Assets LLC (the Smart Trust Deed), a company managed by Brian Smart. Smith defaulted on this loan almost immediately, which initiated a procession of transfers and proceedings that ultimately resulted in this action.

---

(…continued)
the petition for rehearing was filed, and continued to serve on the panel as a senior judge sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6). Judge J. Frederic Voros, Jr. was a member of the panel that initially decided this case, but retired before the petition for rehearing was filed. Judge Kate A. Toomey replaced Judge Voros and fully participated in this Amended Opinion.

¶3 Smart Assets, acting in concert with Smith after he defaulted, assigned the Smart Trust Deed to "SS Services, LLC"[3] in November 2006 (the SS Services Assignment). Smith later told Smart Assets that the SS Services Assignment had been lost and asked Smart Assets to execute a duplicate, which Smart Assets did in March 2007. However, the replacement document Smith presented for signature was not a duplicate of the original assignment to SS Services. Instead, the second document was an assignment of the Smart Trust Deed to a different entity, Capital 360 LLC (the Capital 360 Assignment), something Smart Assets did not realize at the time it signed what it believed was a replacement of the original. These two competing assignments are the root of the direct appeal.

¶4 In January 2007—before execution of the Capital 360 Assignment—SS Services recorded a Notice of Interest based on the SS Services Assignment, though it did not record the assignment itself. The Notice of Interest explained the nature of SS Services' interest in the Property, specifically identifying its acquisition of the Smart Trust Deed through the SS Services Assignment. According to the court, the Notice of Interest "specifically and clearly [gave] notice that 'an unrecorded Assignment of Deed of Trust' relating to and specifically concerning the Property exists." The Notice of Interest contained an accurate legal description of the Property and correctly identified the trustor, trustee, beneficiaries, and recording information (including recording date, entry number, book, and page) for the Smart Trust Deed. And the court found that, in addition to describing the "legal interest SS Services had" under the assignment, the Notice of Interest provided "a valid address where further information about the unrecorded assignment could be found."

---

3. The district court eventually determined that SS Services LLC was a misnomer of Short Sale Services LLC (Short Sale). Whether that determination was correct is an issue on appeal.

¶5     After recording the Notice of Interest, SS Services began a foreclosure proceeding that concluded in a trustee's sale under the Smart Trust Deed. On April 30, 2007, SS Services recorded a trustee's deed conveying full title to the Property to SS Services. However, on April 2, 2007—after SS Services recorded the Notice of Interest in January but before it recorded its trustee's deed on April 30—Capital 360 recorded the Capital 360 Assignment. Capital 360 then moved ahead with its own foreclosure proceeding based on the Capital 360 Assignment.

¶6     It was through Capital 360's foreclosure proceeding that Off-Piste became entangled in the Property. Off-Piste agreed to loan $1.75 million for the purchase of the Property to Canyon Vines Holding and Investments LLC. Canyon Vines secured the loan with its own trust deed to the Property in favor of its lender Off-Piste. Off-Piste recorded the Canyon Vines trust deed on March 2, 2008. Under the terms of the loan, Canyon Vines was to repay Off-Piste in full within fourteen days, but Canyon Vines immediately defaulted on the loan.

¶7     Eventually, another claimant to an interest in the Property, Shane Morris, brought this lawsuit, originally a judicial foreclosure action. Morris named multiple parties including Off-Piste in an attempt to clear the tangled web of title. Off-Piste instituted its own quiet title action via third-party complaint.

¶8     At trial, Off-Piste argued that its predecessor, Capital 360, had a superior claim to the Property compared to SS Services' claim. Specifically, Off-Piste sought to prove that Capital 360 was a bona fide purchaser of the Property and, because Capital 360 recorded the Capital 360 Assignment before the SS Services Assignment was recorded, its interest took priority over SS Services' interest by operation of law.

¶9     The district court ruled in favor of SS Services. It found that SS Services paid valuable consideration for its assignment from Smart Assets and that, in an abundance of caution, SS

Services had obtained an assignment of the underlying promissory note from Smart Assets as well. According to the court, the additional assignment was "further evidence[] that a valid and legal assignment was made to SS Services."

¶10   Regarding the purported assignment of the Smart Trust Deed to Capital 360, the court made three key determinations. First, it found that Smart Assets had no intent to assign the Smart Trust Deed to Capital 360 because Smart Assets was not aware that the second assignment it executed named a party different from the first assignment to SS Services. Second, it found that Capital 360 paid no consideration for its purported assignment from Smart Assets. And third, it found that Capital 360 did not take its interest in good faith because the Notice of Interest put it on notice of the prior assignment of the Smart Trust Deed to SS Services. The court set aside Capital 360's interest in the Property—which also extinguished Off-Piste's interest—and quieted title to the Property in SS Services.

*American Home Mortgage's Involvement with the Property*

¶11   Cross-appellant American Home Mortgage Servicing Inc. (AHM)[4] also claims an interest in the Property, which arose as a result of Smith conveying the Property to Zach Sorensen by warranty deed in 2006, after the Smart Trust Deed had been recorded. Sorensen financed his purchase with loans from Castle & Cooke Mortgage LLC, and he secured the loans' promissory notes by executing trust deeds to the Property. The trust deeds named Castle & Cooke as the lender and Mortgage Electronic Registration Systems Inc. (MERS) as the beneficial interest holder

---

4. In its brief, AHM refers to itself variously as American Home Mortgage Servicing Inc. in some instances (e.g., in the notice of cross-appeal) and American Home Mortgage Corp. in others (e.g., in recorded documents). We presume the names either refer to the same entity or to entities in privity with one another; the context seems to require it, and no one claims otherwise.

of the deed and the nominee of the lender as well as the lender's "successors and assigns."[5] These trust deeds were recorded, and the title company's failure to clear the Property of prior encumbrances, among them the Smart Trust Deed, was a matter of contention below but is not an issue on appeal. Castle & Cooke then apparently endorsed one or both notes in favor of AHM, which endorsements carried with them an assignment of interest in the trust deeds securing the notes.[6] *See* Utah Code Ann. § 57-1-35 (LexisNexis 2010) ("The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor."). Because under the terms of the deeds MERS remained the nominee and continued to hold the deed for AHM (as a successor or assign of Castle & Cooke), this set of transactions was apparently not recorded.

---

5. The MERS relationship to lenders has been a topic of interest in many courts.

> At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's 'successors and assigns,' and as the deed's 'beneficiary' which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf.

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011).

6. If the record is clear on the exact nature and process of AHM's acquisition of its purported interest in the Property, AHM's brief does not cite to that evidence. However, our resolution of the cross-appeal involves a threshold legal issue that the district court decided on summary judgment, so our review does not turn on the nature of or basis for AHM's interest.

¶12 Shane Morris did not name AHM as a defendant when he initiated the original lawsuit. Seeking "Notice[s] of Non-Interest" from various parties, Morris received a letter from Castle & Cooke's attorney that disclaimed his client's interest in the Property. But the letter also informed Morris that the reason Castle & Cooke disclaimed any interest was because it had assigned its interests to AHM, "who [was] the current party in interest to the first mortgage originated by Castle & Cooke." Morris later amended his complaint to add a quiet title action. But despite the letter, Morris continued to name Castle & Cooke as a defendant and did not add AHM or MERS as a party.

¶13 Later, Off-Piste filed a third-party complaint also seeking to quiet title in the Property, the essence of which we explained above. The third-party complaint did not name AHM, but Off-Piste eventually named MERS as a defendant. Within a month of joining MERS in the quiet title case, Off-Piste learned, through a telephone conversation between the manager of Off-Piste and counsel for AHM, that AHM claimed an interest in the Property. Despite that information and Off-Piste's acknowledgement that it understood the importance of "bring[ing] all the parties [with an interest] to the litigation; otherwise, they are not covered," Off-Piste never named AHM as a defendant. Off-Piste did, however, obtain a default judgment against MERS after MERS failed to answer the third-party complaint. The default purported to extinguish any claims that MERS had to the Property.

¶14 Roughly a year later, AHM moved for and was granted permission to intervene in the lawsuit. Off-Piste then moved for summary judgment against AHM on the ground that the default judgment against MERS was binding on AHM as well. Specifically, Off-Piste argued that AHM's interest flowed through the Castle & Cooke trust deeds, which named MERS as the beneficiary, and thus AHM's interest flowed through MERS itself. Because the default judgment stated that "[MERS] and all persons claiming under [MERS] have no right, title, lien, or estate in or to the [Property]," Off-Piste contended that AHM's

interest had already been adjudicated—and eliminated—by the court.

¶15 AHM opposed the summary judgment and also filed motions to set aside the default judgment and for leave to conduct discovery. After a hearing, the court agreed with Off-Piste. It denied AHM's motions and granted summary judgment against AHM, concluding that "[t]he default judgment entered against MERS . . . is binding upon and applicable to AHM." As a result, AHM did not participate at trial. AHM now cross-appeals from the summary judgment decision.

ISSUES AND STANDARDS OF REVIEW

¶16 Off-Piste claims on direct appeal that the trial court made eight errors of various types. According to Off-Piste, however, the "outcome of this case depends upon which of those two competing assignments" from Smart Assets—one to SS Services and one to Capital 360—"gives rise to the legally superior and enforceable chain of title." Thus, the threshold question is whether "the district court erred in concluding" the assignment from Smart Assets to SS Services "[was] valid at all." If we decide the court was correct, the second question is whether the court "erred in ruling that the predecessor at the root of [Off-Piste's] chain of title," Capital 360, "was not a bona fide purchaser" of the Property. We resolve Off-Piste's other issues only to the extent they are necessary to answer the main questions presented.

¶17 Off-Piste's claims present mixed questions of law and fact because the district court was called on to apply "a legal standard to a set of facts unique to a particular case." *Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 24, 308 P.3d 461 (citation and internal quotation marks omitted). "Findings of fact are entitled to the most deference" and "are accordingly overturned only when clearly erroneous." *In re Adoption of Baby B.*, 2012 UT 35, ¶ 40, 308 P.3d 382 (citation and internal quotation marks

omitted). "We take a fresh look at questions of law decided by a lower court, according no deference to its resolution of such issues." *Id.* ¶ 41.

¶18 AHM's cross-appeal consists of four claims of error. But as with Off-Piste's appeal, these issues distill into one core question: whether the court correctly determined on summary judgment that AHM was bound by the default judgment against MERS. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

ANALYSIS

I. Off-Piste's Appeal

¶19 In its essence, this is a quiet title case involving two competing chains of title to the Property. Following trial, the district court set aside Capital 360's interest and quieted title in Short Sale. Because Off-Piste's interest in the Property flowed from Capital 360, the court's decision to set aside Capital 360's deed also extinguished Off-Piste's interest. To resurrect its interest in the Property, Off-Piste makes two core arguments on appeal: first, that the assignment from Smart Assets to Short Sale was not valid, and second, that even if the assignment was valid, Capital 360 was a bona fide purchaser with a superior claim to the Property because it recorded its interest before Short Sale did. We address each argument in turn.

A.      Smart Assets' Assignment to Short Sale/SS Services

¶20 The threshold issue in this appeal is whether the district court correctly determined that SS Services was a misnomer for—and thus legally equivalent to—Short Sale Services. Based

on its misnomer conclusion, the court determined that Smart Assets' assignment of the Smart Trust Deed to SS Services was valid and conveyed an interest in the Property to Short Sale. Off-Piste argues that the misnomer doctrine does not apply and that the court erred as a matter of law. Off-Piste focuses on the fact that the assignment named SS Services as the assignee and argues the assignment was therefore "void because SS Services was a non-existent entity."

¶21    "It is well-settled that an attempted conveyance of land to a nonexisting entity is void." *Julian v. Petersen*, 966 P.2d 878, 881 (Utah Ct. App. 1998). However, "courts endeavor to carry out the grantor's intention whenever [it] is possible." *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 22, 87 P.3d 734 (citation and internal quotation marks omitted). Thus, "the misnomer of a corporation generally will not be treated by the courts as material, if the identity of the corporation is reasonably clear or can be ascertained by sufficient evidence." *Id.* (brackets, citation, and internal quotation marks omitted). The identity of a corporation is reasonably clear when "there is enough expressed [in the document] to show that there is such an artificial being, and to distinguish it from all others." *Id.* (citation and internal quotation marks omitted); *see also Moultrie County v. Fairfield*, 105 U.S. 370, 377 (1881) ("[I]f a corporation is misnamed in a statute, the statute is not thereby rendered inoperative if there is enough from which to ascertain what corporation is meant.").

¶22    Our review of relevant case law indicates that resolution of a misnomer question involves a fact-sensitive inquiry based on the particular circumstances. *See HM of Topeka, LLC v. Indian Country Mini Mart*, 236 P.3d 535, 540 (Kan. Ct. App. 2010) (in the context of a contract, focusing on whether the parties "were not, or were not likely to have been, misled by the misidentification" of the corporation); *accord Hard Money Funding*, 2004 UT App 44, ¶ 24 (examining "[t]he circumstantial evidence surrounding the situation"). Further, it appears that the misnomer doctrine serves the overriding policy goal of construing documents related to real property in keeping with the intent of parties. *See Hartman v.*

*Potter*, 596 P.2d 653, 656 (Utah 1979) ("[T]he main object in construing a deed is to ascertain the intention of the parties, especially that of the grantor[.]"). Put simply, the misnomer doctrine works to protect the grantor's wishes when a drafting mistake was an error of form rather than of substance, particularly when third parties are not misled to their injury. *See HM of Topeka*, 236 P.3d at 540; *see also Sunstone at Colorado Springs Homeowners Ass'n, Inc. v. White*, 56 P.3d 127, 130 (Colo. App. 2002) (concluding that "the variation or misnomer in plaintiff's name as set forth in the [legal document was] immaterial" in part because "there [was] no evidence that the misnomer . . . frustrated the identification of plaintiff or caused confusion to defendants").

¶23   In this case, the district court found that "there [was] no SS Services, LLC, registered in Utah," but it nevertheless concluded that Smart Assets' assignment of the Smart Trust Deed to SS Services was valid and conveyed the interest to Short Sale. According to the court, "There was never any dispute that SS Services meant Short Sale Services, LLC." Indeed, the court found that SS Services was shorthand used "both internally and by third parties" and that "[n]o evidence [was] presented documenting that anyone was confused, prejudiced, or misled in any way by this use of" SS Services. Thus, the court concluded "that SS Services . . . [was] the misnomer of defendant Short Sale Services, LLC" and the "use of the misnomer was immaterial and legally insignificant."

¶24   Off-Piste argues that an incorrect corporate name is only a misnomer if there is enough information to distinguish the entity from all others, and here "there [was] nothing on the face of [the] documents from which one could discern or distinguish that [SS Services] meant an otherwise completely unmentioned 'Short Sale Services, LLC.'" In essence, Off-Piste contends that the SS in SS Services could have referred to "any other entity whose name might have two s-words or initials in it" and therefore the misnomer doctrine does not apply.

¶25 We agree with the district court. The essential misnomer question is not whether the assignment's use of "SS Services, LLC" could conceivably have, in the abstract, referred to some entity other than Short Sale. Rather, the inquiry is focused on whether the "identity of the corporation is reasonably clear or can be ascertained by sufficient evidence." *Hard Money Funding*, 2004 UT App 44, ¶ 22 (citation and internal quotation marks omitted). Here, the court found that the name SS Services was used as shorthand both internally and by third parties, which indicates that the identity of the corporate entity was "reasonably clear." *See id.* Additionally, the document that Off-Piste challenges on appeal included more information than just the shorthand name of the assignee. In fact, the assignment also contained a physical address for SS Services. Thus, even if we assume for sake of argument that the use of SS Services standing alone lacked the reasonable clarity required by the misnomer doctrine, the address was additional "sufficient evidence" from which the true identity of SS Services could be ascertained. *See id.*

¶26 Finally, we note that the circumstances surrounding the assignment also support the district court's conclusion. For instance, Smart Assets—the grantor or assignor—displayed its intent to assign the Smart Trust Deed when it executed the assignment and treated it as valid. *See id.* ¶ 24 ("Moreover, the clarity of [the grantors'] intentions is made plain by the fact that [they] . . . then proceeded to act as if the property had been validly conveyed to [the misnamed grantee] . . . ."). And Short Sale likewise acted in every way like the party who had received the assignment, first by giving Smart Assets over $250,000 in consideration and then by proceeding to foreclose on the Property under its newly-assigned right. Further, the district court's finding that "[n]o evidence [was] presented documenting that anyone was confused, prejudiced, or misled in any way" by the misnomer is unchallenged on appeal.

¶27 We therefore affirm the district court's determination that SS Services was a misnomer for Short Sale: the assignment of the

Smart Trust Deed was reasonably clear to the parties on its face, contained additional information from which the true identity of SS Services could be ascertained, and conformed to the intent of the parties to the transaction. *See Hartman v. Potter*, 596 P.2d 653, 656 (Utah 1979); *Hard Money Funding*, 2004 UT App 44, ¶ 22.

B.     Capital 360's Status as a Bona Fide Purchaser

¶28     We now turn to Off-Piste's contention that, even if the SS Services Assignment was valid, Capital 360's later assignment took priority because Capital 360 was a bona fide purchaser and was the first to record. Specifically, Off-Piste asserts that the court incorrectly found that "Capital 360 had notice of the unrecorded" SS Services Assignment. According to this argument, Capital 360 had a superior claim to the Property because it took its interest without notice of Short Sale's already-existing interest and went on to record the interest before its rival did.

¶29     Utah is a race-notice jurisdiction, which means timing matters. "Each document not recorded as provided in this title is void as against any subsequent purchaser . . . if: (1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and (2) the subsequent purchaser's document is first duly recorded." Utah Code Ann. § 57-3-103 (LexisNexis 2010). Thus, the party that records its interest first generally takes priority over another interest holder, even if the other party acquired its interest earlier in time. But for a subsequent purchaser's interest to take priority by being recorded first, the subsequent purchaser must have taken its interest in good faith. *See id.* § 57-3-103(1). As our supreme court recently put it, "where two purchasers claim title to real property, the subsequent purchaser prevails [only] so long as he took the property in good faith and was the first to record his interest." *Pioneer Builders Co. of Nevada v. K D A Corp.*, 2012 UT 74, ¶ 22, 292 P.3d 672.

¶30    A party who takes an interest in good faith is also known as a bona fide purchaser, or BFP.[7] *Baldwin v. Burton*, 850 P.2d 1188, 1197 (Utah 1993). "[T]o take property in good faith, a subsequent purchaser must take title to the property without notice of a prior, unrecorded interest in the property." *Pioneer Builders*, 2012 UT 74, ¶ 23 (citation and internal quotation marks omitted). Notice can take one of two forms: actual notice or constructive notice. In this case, no party contends that Capital 360 had actual notice of SS Services' interest in the Property, and we thus focus on constructive notice.

¶31    Constructive notice "may result from [either] record notice or inquiry notice." *Id.* Record notice "results from a record or is imputed by the recording statutes." *Id.* ¶ 24 (citation and internal quotation marks omitted). Under the statute, properly recorded documents "impart notice to all persons of their contents." Utah Code Ann. § 57-3-102(1) (LexisNexis 2010). "Thus, when documents filed with the county recorder disclose an interest in a particular property, a subsequent purchaser has record notice of the competing interest and does not take in good faith." *Pioneer Builders*, 2012 UT 74, ¶ 24.

¶32    With that background in mind, we turn to the district court's decision below. The court found, and no party contests on appeal, that Capital 360 recorded the Capital 360 Assignment

---

7. In the proceedings below and in the briefing on appeal, the court and parties acknowledged the various transactions at issue are properly considered encumbrances on the Property rather than purchases or transfers of it. Under modern Utah law that distinction does not make a difference. *See South Sanpitch Co. v. Pack*, 765 P.2d 1279, 1281 (Utah Ct. App. 1988) (explaining that a predecessor recording statute applied "not only the transfers of estates or interests in land, but also mortgages, incumbrances, etc." (citation and internal quotation marks omitted)). We therefore treat the common term "bona fide purchaser" as applying to the assignments at issue here.

before Short Sale recorded the SS Services Assignment. However, the court nonetheless quieted title in Short Sale because it determined that Capital 360 did not take its interest in good faith and was therefore not a bona fide purchaser entitled to priority under the recording statute. To reach that conclusion, the court made several key findings and conclusions. First, as we discussed above, the court determined that SS Services was "merely a misnomer of Short Sale Services, LLC." Thus, in terms of notice, "the use of the misnomer [had] no legal effect" because the Notice of Interest that Short Sale recorded "sufficiently identified the proper grantee" and "did not cause any harm to any third party." (Internal quotation marks omitted.) Second, the court concluded that Short Sale's Notice of Interest "was properly executed and recorded" and "gave notice of the unrecorded assignment to [Short Sale] of the Property." Third, the court concluded that "Capital 360 was not a bona fide purchaser . . . because the Smart [Trust] Deed was previously assigned to [Short Sale, and] Capital 360 had notice of such prior interest by virtue of the recorded" Notice of Interest. In short, the court determined that "[Short Sale's] interest in the [Property] was 'first in time,'" that the Notice of Interest legally informed all parties of that fact, and "therefore no one after [Short Sale could] claim to be a bona fide [purchaser] without notice."

¶33   Off-Piste argues that the court "erroneously concluded Capital 360 had notice of [Short Sale's] unrecorded" interest in the Property. Specifically, Off-Piste claims that the "Notice of Interest [was] facially defective and, as a matter of law, provides no relevant constructive notice." According to Off-Piste, the defect flows from the fact that the Notice of Interest identified Brian Smart rather than Smart Assets as the assignor; and because the assignable interest belonged to Brian Smart's company Smart Assets, not to Brian Smart the individual, Brian Smart had no interest in the Property to assign. Accordingly, Off-Piste asserts that "the Notice of Interest was a 'wild' document." Off-Piste then cites *Pioneer Builders* for the proposition that "'wild' deeds are defective," and "'a person who records a defective deed imparts to subsequent purchasers

notice only that his claimed interest is defective.'" (Quoting *id.*, 2012 UT 74, ¶ 53.)

¶34    As we understand it, Off-Piste's argument is that a notice of interest related to an assignment must correctly name the assignor to be valid. Specifically, Off-Piste asserts that the Notice of Interest incorrectly stated the name of the assignor of the SS Services Assignment. According to Off-Piste, if that error had existed in the assignment itself, the error would have rendered the SS Services Assignment an invalid "wild" document under *Pioneer Builders. See id.* ¶ 53. Thus, concludes Off-Piste, the Notice of Interest was itself invalid and did not put Capital 360 on constructive notice of a prior unrecorded interest in the Property.

¶35    We are not persuaded by Off-Piste's argument for two reasons. First, the unstated premise of the argument is that a notice of interest has the same requirements as the underlying document to which it refers, in this case the requirement to correctly name the assignor. It does not. A notice of interest has a different purpose from a deed or an assignment and the Utah Code reflects that fact. Under Utah law, a notice of interest is simply a way to "preserve and keep effective" "an interest in land," *see* Utah Code Ann. § 57-9-4(1) (LexisNexis 2010), and it has similarly simple requirements, *see Russell v. Thomas*, 2000 UT App 82, ¶ 13, 999 P.2d 1244 (suggesting that the requirements for a notice of interest are "minimal[]"). "Any person claiming an interest in land may preserve and keep effective such interest by filing for record . . . a notice in writing, duly verified by oath, setting forth the nature of the claim." Utah Code Ann. § 57-9-4(1). In addition to stating the nature of the claim, "to be effective and to be recorded, the notice . . . shall contain a legal description of all land affected by the notice." *Id.* § 57-9-5.

¶36    We thus reject the premise on which Off-Piste bases its argument. To be valid, a notice of interest must set forth the nature of the claimant's claim and the legal description of the land affected by that claim, and the Notice of Interest at issue

here did both. It stated the nature of Short Sale's interest, namely that Short Sale had acquired an interest in the Property through an assignment that "assigned and transferred all beneficial interest under [the original Smart Trust Deed]." That assignment was valid, as we determined above. In addition, the Notice of Interest identified the book and page where the Smart Trust Deed was recorded, and it accurately set forth the legal description of the land affected by the interest, namely the Property's legal description, its county parcel number, and its address. Therefore, even if we assume without deciding that the Notice of Interest's misnaming of Brian Smart as the assignor (instead of his company Smart Assets) was more than a scrivener's error, that error is irrelevant to determining the legal effect of the Notice of Interest—correctly naming the assignor of an interest is simply not a legal prerequisite for recording a valid notice of interest.

¶37 Second, and for many of the same reasons, we are not persuaded by Off-Piste's reliance on the wild deed analysis in *Pioneer Builders*. Indeed, that case does not appear to apply here because a notice of interest seems to be different in kind from the trust deeds at issue there. *See* 2012 UT 74, ¶ 51. *Pioneer Builders* explains that "[a] wild deed is a deed executed by a grantor who does not have record ownership of the property." *Id.* Here, the Notice of Interest was neither a deed nor executed by the grantor. Instead, it was recorded by Short Sale, the assignee (or grantee), as authorized by the Utah law explained above. *See* Utah Code Ann. § 57-9-4(1). And unlike in *Pioneer Builders* where the underlying "conveyance was not legitimate," 2012 UT 74, ¶ 54, the underlying conveyance in this case—the SS Services Assignment—was valid for the reasons discussed previously. In other words, *Pioneer Builders* analyzed the legal consequences flowing from an invalid conveyance, whereas this case involves the opposite—analysis of the legal consequences flowing from a valid conveyance. We are therefore not convinced that the wild deed doctrine applies to this situation.

¶38 We conclude that the Notice of Interest's arguably incorrect identification of Brian Smart as the assignor rather than Smart Assets, the company he managed, does not nullify the legal effect of the Notice of Interest. It imparted notice of its information to the world—that the very trust deed on which Capital 360 based its interest had already been assigned to another party. *See* Utah Code Ann. § 57-3-102(1) (LexisNexis 2010) (stating that recorded documents "impart notice to all persons of their contents"). "[T]o take property in good faith, a subsequent purchaser must take title to the property without notice of a prior, unrecorded interest in the property." *Pioneer Builders*, 2012 UT 74, ¶ 23 (citation and internal quotation marks omitted). Here, Capital 360 did not take its own later assignment of the Smart Trust Deed in good faith because it had constructive notice of a prior assignment through the recorded Notice of Interest. We therefore affirm the district court's determination that Capital 360 was not a bona fide purchaser entitled to priority under Utah's race-notice statute.

C.      Off-Piste's Remaining Claims

¶39     As Off-Piste states in its brief, "The outcome of this case depends upon which of those two competing assignments of the Smart Trust Deed"—one to Short Sale and one to Capital 360—"gives rise to the legally superior and enforceable chain of title." As discussed above, we have affirmed the district court's determinations that the assignment to Short Sale was valid and that Capital 360 was not a bona fide purchaser entitled to priority under the race-notice statute. Those determinations effectively resolve the issues presented in Off-Piste's appeal and we therefore only briefly address its remaining six claims.

¶40     First, Off-Piste contends that the "district court erred in concluding the [Capital 360 Assignment] was executed without intent," a conclusion the court reached essentially on the basis that Smith had misrepresented what turned out to be the Capital 360 Assignment as merely a duplicate of the original assignment to SS Services. *See Winegar v. Froerer Corp.*, 813 P.2d 104, 110

(Utah 1991) ("A conveyance is valid only upon delivery . . . with present intent to transfer."). But even if the court erred in that regard, the error was harmless because the court set aside Capital 360's alleged interest in the Property on a number of independent alternative grounds, only one of which was based on the assignor's lack of intent. *See Bahnmaier v. Northern Utah Healthcare Corp.*, 2017 UT App 105, ¶ 23 (explaining that "we do not need to address the district court's analysis of [one of the bases for its decision] because we affirm on the court's alternative ground"). We have already affirmed one of the court's other grounds, namely its conclusion that Capital 360 was not a bona fide purchaser. It is therefore irrelevant whether Smart Assets intended to assign an interest to Capital 360 or not—Short Sale's interest took priority because it was first in time and all other parties had notice of that fact. *See Homeside Lending, Inc. v. Miller*, 2001 UT App 247, ¶ 17, 31 P.3d 607 ("Normally, competing interests in land have priority in order of their creation in point of time, following the general rule first in time, superior in right." (ellipses, citation, and internal quotation marks omitted)).

¶41    Second, Off-Piste argues that the "district court erred in analyzing whether Off-Piste was a BFP." This argument is based on the premise that, "[i]f (and because) Capital 360 was a BFP," Short Sale's interest "became void as against Capital 360" and all subsequent claimants "including ultimately Off-Piste." (Emphasis omitted.) However, we have rejected the premise on which Off-Piste's argument is based. Because we have affirmed that Capital 360 was not a BFP, any claim of error that rests on Capital 360's BFP status necessarily fails.

¶42    Third and fourth, Off-Piste raises two evidence-related arguments: one, that the "district court erred in excluding evidence regarding the [alleged consideration]" that Capital 360 paid for its interest in the Property, and two that the "district court erred in denying Off-Piste's motion to conduct additional discovery" related to "the key issue of consideration." These arguments are aimed at the court's determination that "Capital

360 did not provide valuable consideration for [its] assignment." That is, Off-Piste argues that two evidentiary errors prevented it from proving that Capital 360 gave valuable consideration for the Capital 360 Assignment. But as we have explained, the court's ultimate determination that Capital 360's interest in the Property did not have priority over the SS Services Assignment rested on independent alternative grounds. Even if the court had allowed the contested evidence and concluded that Capital 360 paid valuable consideration for its interest, the court still correctly determined that Capital 360 was not a bona fide purchaser because it had notice of Short Sale's prior interest. *See* Utah Code Ann. § 57-3-103(1) (LexisNexis 2010) (requiring that, to take advantage of the race-notice statute, the purchaser must have "purchased the property in good faith *and* for a valuable consideration" (emphasis added)). Thus, even if the district court made an evidentiary error, the error was harmless in the broader context of the court's determination that Capital 360 was not a BFP—that decision was independently correct under the court's good faith analysis.

¶43   Fifth, Off-Piste asserts that the district court erred in denying its post-trial motion to amend its complaint "to add a claim for judicial foreclosure." But Off-Piste does not explain how a judicial foreclosure proceeding would have been appropriate given the district court's conclusion that "Off-Piste [had] no claim or interest in the property." While Off-Piste may possibly have sought such an amendment to preserve certain procedural steps in the event the district court's holding was overturned on appeal, that has not happened. As a consequence, we do not need to reach this argument.

¶44   Finally, the issue of whether Capital 360 gave consideration for its assignment arose again after trial. Off-Piste moved for a new trial based on evidence that "was not discovered by Off-Piste until after the close of the first day of trial," which motion the court denied. But once again, the newly discovered evidence that Off-Piste claims entitled it to a new trial—a "$200,000 Note" that parties "failed to reveal" during

discovery—related to the question of whether Capital 360 paid consideration for its interest in the Property. As we have explained, the issue of consideration is irrelevant in light of our affirmance of the court's alternative conclusion that Capital 360 was not a BFP.

¶45    For these reasons, we do not reach the merits of Off-Piste's final claims, and we affirm the district court's decision to quiet title to the Property in Short Sale.

## II. American Home Mortgage's Cross-Appeal

¶46    As with Off-Piste's direct appeal, AHM's cross appeal is in essence a quiet title case involving various entangled interests in the Property. Before trial, the district court entered a default judgment against MERS, concluding that "[MERS] and all persons claiming under [MERS] have no right, title, lien, or estate in or to the [Property]." On summary judgment after AHM intervened, the court determined that AHM claimed its interest under MERS because the trust deed created an agency relationship between MERS and the deed's beneficial interest holder, originally the lender Castle & Cooke, that extended to all Castle & Cooke's successors in interest. And because AHM was the successor to Castle & Cooke, MERS was therefore also an agent for AHM. Accordingly, the court found that service of the lawsuit on MERS "constituted valid service upon AHM," and thus the default against MERS was "binding upon and applicable to AHM" as well.

¶47    AHM argues that the court erred in its reasoning because the default against MERS was not binding on AHM as a matter of property law. According to AHM, a "'party who seeks to quiet title to a piece of land must join all *known* persons who are claiming title.'" (Quoting 7 Charles A. Wright et al., Federal Practice and Procedure § 1621 (3d ed. 1998).) Thus, AHM asserts that the default did not bind it "because [Off-Piste] did not name AHM in the quiet title action despite having actual knowledge that AHM claimed an interest in the Property."

¶48 We agree with AHM. Under Utah's quiet title statute, a "judgment shall be conclusive against" only two classes of persons. *See* Utah Code Ann. § 78B-6-1315(4) (LexisNexis 2012). One class consists of "all the persons named in the summons and complaint who have been served" and the other class consists of "all unknown persons as stated in the complaint and summons who have been served by publication." *Id.* These two groups are mutually exclusive because persons that were named and served cannot by definition be unknown persons—a claimant to title cannot be at once known and unknown.

¶49 In this case, AHM was a known "person" because the quiet title plaintiffs—Morris in the original action and Off-Piste in its third-party complaint—had actual notice that AHM claimed an interest in the Property. Morris knew from Castle & Cooke's attorney that Castle & Cooke had assigned its interests to AHM, which made AHM a successor in interest under the Castle & Cooke loans. And Off-Piste knew that AHM claimed an interest in the Property through a phone conversation its manager had with AHM's attorney.[8] Therefore,

---

8. Off-Piste contends that its phone conversation with AHM did not give rise to actual knowledge that AHM claimed an interest in the Property. In essence, Off-Piste's point is that AHM's counsel was himself "unsure which entity owned the [Castle & Cooke] interest"; it could have been American Home Mortgage Servicing Inc., American Home Mortgage Corp., *see supra* ¶ 11 n.2, or some other securitization trust. According to Off-Piste, the conversation could not constitute actual knowledge because it would "have had to guess which" of the various entities actually owned the interest. We believe that, when Off-Piste's manager testified that AHM's counsel told him "[t]hey do have an interest in the property," the manager disclosed that he knew AHM claimed some sort of interest in the Property, even if the exact nature of the interest was unknown. But even if we agreed with Off-Piste and reached the opposite conclusion, it is uncontestable that the conversation put Off-Piste

(continued…)

AHM was not an unknown person subject to service by publication. *Cf. Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 11, 100 P.3d 1211 ("[L]itigants may not resort to service by publication until they have first undertaken reasonably diligent efforts to locate the party to be served.").

¶50 Because AHM was a known person, the quiet title judgment entered against it could only be conclusive if AHM was named in the summons and complaint and served with process. *See* Utah Code Ann. § 78B-6-1315(4) (LexisNexis 2012); *see also Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 2016 UT App 107, ¶ 10, 372 P.3d 741 (determining that, because the plaintiff had constructive notice that a bank claimed an interest in real property, the bank "could not have been considered an 'unknown' person" under the quiet title statute and the bank therefore had to be named in the quiet title action to be bound by it). Here, because AHM was neither named nor served by either of the quiet title plaintiffs, the quiet title judgment was not conclusive against AHM.

¶51 Off-Piste's contrary argument—that, as the district court concluded, "AHM [was] bound due to its relationship [with] MERS"— does not persuade us otherwise. In our recent *Sterling*

---

(…continued)
on inquiry notice that some entity in addition to MERS claimed an interest in the Property. *Cf. Pioneer Builders Co. of Nevada v. K D A Corp.*, 2012 UT 74, ¶ 25, 292 P.3d 672 (explaining that a party "may not shut his eyes or his ears to avoid information or remain wilfully ignorant of facts that give rise to a duty to inquire" (citation and internal quotation marks omitted)). And inquiry notice of a person's existence is sufficient to make that person "known" under the quiet title statute. *See Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 2016 UT App 107, ¶ 10, 372 P.3d 741 (concluding that, because the plaintiff had constructive notice of a bank's interest, the bank "could not have been considered an 'unknown' person" for quiet title purposes).

*Fiduciaries* decision we considered the relationship between a bank and MERS that was functionally identical to the one at issue here. 2016 UT App 107, ¶ 3. We recognized that MERS' interest as a nominee is distinct from the interest of the underlying beneficial interest holder, the lender (or the lender's successors and assigns). *See id.* ¶ 13. And we concluded that, because those interests were distinct, quiet title actions must name both MERS and the underlying interest holder for those parties to be bound by the quiet title judgment. *See id.* ¶¶ 17–18. In short, it is the language of the quiet title statute that controls whether title can be quieted in or against a party, not the legal nuances of an agent-principal relationship between the parties.

¶52 We further note that our conclusion accords with another facet of the quiet title statute. The statute proscribes default judgments from being entered against unknown defendants. Utah Code Ann. § 78B-6-1315(3) (LexisNexis 2012) ("The court may not enter any judgment by default against unknown defendants . . . ."). Thus, for the default to have bound AHM, AHM must have first been a known defendant. And if AHM was a known defendant, then it must have been "named in the summons and complaint [and] served" with process for the judgment to have been effective. *See id.* § 78B-6-1315(4). That is, AHM cannot simultaneously have been unknown for purposes of service but known for purposes of default.[9]

---

9. While we do not decide the point here, we also note that our decision appears to comport with a general principle of quiet title claims. It is hornbook law that, "[t]o succeed in an action to quiet title to real estate, a party must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Gillmor v. Blue Ledge Corp.*, 2009 UT App 230, ¶ 14, 217 P.3d 723 (citation and internal quotation marks omitted). Because the district court determined, and we have affirmed, that Off-Piste has no interest in the Property—the strength of its own claim to title is nil—it seems to follow that

(continued…)

¶53 We therefore reverse the district court's entry of summary judgment against AHM and remand for any further proceedings that may be appropriate. And because we resolve this quiet title issue under the language of the quiet title statute and remand to the district court, we do not address the remainder of AHM's cross-appeal. Nor do we reach or express an opinion on the court's determination that MERS is an agent for AHM or any other interest holder under the trust deeds at issue.

CONCLUSION

¶54 We conclude that the district court correctly determined that SS Services was a misnomer for Short Sale Services. Because the use of SS Services rather than Short Sale was of no legal effect, the court correctly concluded that the Notice of Interest put Capital 360 on notice of a prior unrecorded interest in the Property. Capital 360 was therefore not a bona fide purchaser of the Property entitled to priority under the recording statute. Short Sale's interest in the Property was superior to Off-Piste's purported interest and we affirm the court's order quieting title in Short Sale.

¶55 We also conclude that the quiet title judgments bind parties known to have an interest in property only if they are

---

(…continued)

Off-Piste's attempts to prove otherwise cannot have extinguished AHM's interest. That is, it seems that AHM's interest in the Property could not have been extinguished by a party that did not have its own valid interest in the Property in the first instance. And this line of reasoning also suggests that, while a certificate of default might be entered against a defendant who fails to appear, a default judgment quieting title against the defendant cannot be entered until the plaintiff affirmatively proves his or her interest. But, again, we leave that question for another day.

named in the suit and served with process. Because AHM was a known party but was not named or served, we reverse the district court's summary judgment decision that quieted title against AHM. We remand the case for further action consistent with this opinion.

––––––––––